# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 1:19-cr-00015-DAD-SAB |
|---|---|
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTION TO DISQUALIFY AND FOR INQUIRY INTO CONFLICT OF INTEREST |
| v. | |
| ERIK RAZO-QUIROZ, et al., | |
| Defendants | (ECF Nos. 78, 80, 84, 90, 110, 120, 129, 133) |

## I.

## RELEVANT PROCEDURAL HISTORY

On January 2, 2019, a criminal complaint was filed in this action charging Bernabe Madrigal Castaneda, Maria Luisa Moreno, Erasmo Villegas Suarez, Ana Leydi Cervantes Sanchez, Conrado Virgen Mendoza, Erik Razo Quiroz, and Adrian Virgen Mendoza with harboring and concealing an alien in violation of 8 U.S.C. § 1324(A(1)A)(iii); Castaneda, Moreno and Suarez with conspiring to have Gustavo Arriaga travel to Mexico to avoid prosecution in violation of 18 U.S.C. §§ 371 and 1073(1); and Quiroz with being an illegal alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A). (ECF No. 1.)

On January 15, 2019, Defendants Castaneda, Moreno, and Suarez made an initial appearance and were all represented by counsel Willard Bakeman. (ECF No. 12.) Magistrate Judge Erica P. Grojean, at the Government's request, made an inquiry into a conflict of interest

due to the joint representation. (Id.) On January 22, 2019, Defendants Castaneda, Moreno, and Suarez appeared and were all represented by counsel Willard Bakeman. (ECF No. 40.) An indictment was filed on January 24, 2019, after which Defendants Castaneda, Moreno, and Suarez filed a motion to dismiss. (ECF Nos. 55, 51.) On January 25, 2019, an order was filed dismissing the conspiracy charges as to Defendants Castaneda, Moreno, and Suarez. (ECF No. 51.) On January 29, 2019, Defendants Castaneda, Moreno, and Suarez were indicted and pled not guilty. (ECF No. 75.)

On January 30, 2019, the Government filed a motion alleging a conflict of interest due to Defendants Castaneda, Moreno, and Suarez being represented by the same counsel and requested inquiry into the third-party fee payment. (ECF No. 78.) On January 31, 2019, Defendants Castaneda, Moreno, and Suarez filed an opposition to the motion for conflict of interest. (ECF No. 80.) On February 1, 2019, Defendants Castaneda, Moreno, and Suarez filed a waiver of conflict of interest, and the Government filed a reply. (ECF Nos. 84, 90.)

On February 4, 2019, counsel David Torres substituted in as counsel for Defendant Castaneda. (ECF No. 94, 100.) On February 5, 2019, a hearing was held on the Government's motion for conflict of interest. (ECF No. 102.) Counsel Willard Bakeman appeared for Defendants Moreno and Suarez, counsel David Torres appeared for Defendant Castaneda, and counsel Karen Escobar and Laura Withers appeared for the Government. (ECF No. 102.) Hearing on the motion was continued to February 11, 2019. (Id.)

On February 6, 2019, the Government filed a motion to disqualify for conflict of interest and for inquiry into the third-party fee payment. (ECF No. 110.) On February 7, 2019, counsel Serita Rios was appointed to represent Defendant Suarez. (ECF No. 114.) Defendant Moreno filed an opposition to the motion to disqualify for conflict of interest and for inquiry into the third-party fee payment on February 8, 2019. (ECF No. 120.)

On February 11, 2019, a hearing was held on the Government's motion to disqualify for conflict of interest and inquiry into third-party fee payment. (ECF No. 123.) Counsel Willard Bakeman appeared for Defendant Moreno; counsel Serita Rios appeared for Defendant Suarez, counsel David Torres appeared for Defendant Castaneda, and counsel Karen Escobar appeared

for the Government. (Id.) The Court addressed the conflict of interest with Defendants Castaneda, Moreno, and Suarez and the defendants all agreed to waive any potential conflict that had arisen from the joint representation. (Id.) The hearing was continued for the Government to file additional briefing regarding the third-party fee payment under seal. (Id.)

On February 16, 2019, the Government filed a memorandum in support of the request for inquiry into third party fee payment. (ECF No. 129.) A superseding indictment was filed on February 21, 2019. (ECF No. 132.) On February 22, 2019, Defendant Moreno filed an opposition to the request for inquiry into the third-party fee payment. (ECF No. 133.)

A hearing on the Government's motion for inquiry into the third-party fee payment was held on February 25, 2019. Counsel Willard Bakeman appeared for Defendant Moreno; and counsel Laura Withers and Karen Escobar appeared for the Government.

## II.

## LEGAL STANDARD

"The right to counsel guaranteed by the Sixth Amendment is a fundamental right." Cuyler v. Sullivan, 446 U.S. 335, 343 (1980). "An accused who can afford to retain his own attorney is entitled to counsel of his choice, though he can be required to make his choice promptly so that the trial will not be delayed, and may be prevented from retaining an attorney with a conflict of interest." Choice of Counsel; Joint Representation, 3B Fed. Prac. & Proc. Crim. § 737 (4th ed.). "[T]he right to counsel is not absolute and the district court retains its discretion to refuse to allow counsel to represent the defendant." Id.

It is well established that requiring an attorney to represent several defendants whose interests are in conflict is a denial of the Sixth Amendment right to effective assistance of counsel. Cuyler, 446 U.S. at 345; Holloway v. Arkansas, 435 U.S. 475, 481 (1978). "Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981); accord Lockhart v. Terhune, 250 F.3d 1223, 1226 (9th Cir. 2001). The right to adequate assistance of counsel applies to pretrial proceedings, plea negotiations, trial and sentencing. Halloway, 435 U.S. at 489-90. However, joint representation is not per se violative

of the Sixth Amendment right to effective assistance of counsel. Id. at 482.

Rule 44 of the Federal Rules of Criminal Procedure requires that whenever two or more defendants have been jointly charged under Rule 8(b) and they are represented by the same counsel or counsel associated in law practice,

> [t]he court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

Fed. R. Crim. P. 44(c)(2).

The Rules of Professional Conduct of the State Bar of California have been adopted by the Eastern District of California as the standards of professional conduct for attorneys. Local Rule 180(e). The California Rules of Professional Conduct provide that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent." Cal. Rules Prof'l Conduct R. 1.9(a).

## III.

## DISCUSSION

The Government seeks for the Court to determine if there is an actual or potential conflict of interest due to the joint representation of the three defendants;[1] if there is a conflict, whether the defendants have waived their right to conflict free counsel, and whether to accept or decline the waivers in light of the many unforeseeable conflicts posed by joint representation.

### A. Conflict of Interest

The Government originally argued that the joint representation of the three codefendants in this action raises potential conflicts of interest as the three codefendants had varying levels of culpability with themselves and the other codefendants who have implicated each other. The Government contends that Mr. Bakeman's joint representation of the three codefendants would

---

[1] As all three defendants are now represented by separate counsel, the Court addresses the arguments of the parties to the extent that they are relevant to the previous joint representation.

4

preclude him from seeking a favorable plea agreement for one of his clients who may be less culpable than the other codefendants. Further, the Government argues that at trial, Mr. Bakeman will be in the precarious position of having to decide whether to elicit testimony favorable to his current client and adverse to the codefendant based on his knowledge due to his previous representation.

Defendants Castaneda, Moreno, and Suarez counter that the current motion is based solely on speculation and inferences and is redundant as the Rule 44 inquiry has already taken place. Defendants Castaneda, Moreno, and Suarez contend that a conflict waiver has been obtained and that the government is only setting forth a "mystifying recitation of the facts" that provides "no clarity as to their claim of apparent conflict. . .." (ECF No. 80 at 2.)

The Government replies that the conflict waiver signed by Defendants Castaneda, Moreno, and Suarez is conclusory and does not indicate that the codefendants were aware of and understood the ramifications of the waiver. There is no indication that Mr. Bakeman informed the codefendants that he owes them a continuing duty of loyalty, or that he discussed the continuing duty of loyalty and the nature and ramifications of the joint representation that could create conflicts of interest.

After two of the codefendants obtained other representation, the Government argued that Mr. Bakeman's ethical obligations to his current and former clients have been compromised by his continued duty of loyalty to his former clients. The Government contends that the codefendants contradictory statements regarding whether and when they knew that Arriaga had killed a police officer create an actual conflict of interest because Mr. Bakeman has a duty to use his best efforts to undermine the credibility of Madrigal and Villegas and shift the blame away from Moreno, but he is unable to do so without violating his continuing duty to his former clients. The Government asserts that Mr. Bakeman will be in the position that he might refrain from cross-examining his former clients about their post-Miranda statements to avoid confronting them about the truth or falsity of those statements and in the process Defendant Moreno would be disadvantaged. The Government argues that since the three codefendants are now being represented by separate counsel, the conflict between Mr. Bakeman and the three

codefendants is more pronounced as the interests of the three are more clearly pitted against each other. The Government contends that under the California Rules of Professional Conduct disqualification of Mr. Bakeman is mandatory.

Defendant Moreno counters that there is no factual basis for a finding that there is an actual conflict of interest and any hypothetical conflict has been knowingly and intelligently waived. Defendant Moreno argues that the single charge against the defendants is harboring an illegal alien and it is against that charge that a potential conflict must be shown. Defendant Moreno contends that there is no situation in which counsel would want to discredit the testimony of the codefendants.

1. <u>Whether there is a conflict that requires disqualification of Mr. Bakeman</u>

"An 'attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.' " <u>Cuyler</u>, 446 U.S. at 346 (quoting <u>Halloway</u>, 435 U.S. at 485). "Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." <u>Cuyler</u>, 446 U.S. at 346. But, "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." <u>Holloway</u>, 435 U.S. at 488. Where a defendant is convicted while represented over his objection by a trial with a conflict of interest, reversal is automatic." <u>Id.</u> at 489; <u>Houston v. Schomig</u>, 533 F.3d 1076, 1081 (9th Cir. 2008).

"There is an actual, relevant conflict of interests if, during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue or to a course of action." <u>United States v. Walter-Eze</u>, 869 F.3d 891, 901 (9th Cir. 2017) (quoting <u>Cuyler</u>, 446 U.S. at 356 n.3). "In other words, an 'actual conflict' is 'a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties.' " <u>Walter-Eze</u>, 869 F.3d at 901. Conflicts have been found where defense counsel has failed to put on certain defenses or witness, failed to explore the possibility of a plea agreement, or failed to seek a continuance despite only recently having taken on the case. <u>Id.</u>; see <u>Wheat v. United</u>

States, 486 U.S. 153, 160 (1988) ("conflict may . . . prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another").

"An actual conflict exists when a defendant is placed 'at odds with co-defendants who were in fact more culpable.' " Lockhart, 250 F.3d at 1231 (quoting United States v. Allen, 831 F.2d 1487, 1496 (9th Cir.1987). "[W]here a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented." Wheat, 486 U.S. at 162.

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly.
>
> The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.

Id. at 162–63. Therefore, the district court is allowed substantial latitude in refusing waivers of conflicts of interest where an actual conflict actually exists, but also in the more common case where a potential for conflict exists which may or may not develop into an actual conflict as the trial progresses. Id. at 163.

Mr. Bakeman asserts, and the Government concedes, that there are no actual conflicts of interest currently present in this action. Although the Government argues that the codefendants made conflicting statements regarding when they first became aware that Arriaga had killed a police officer, the charge here involves harboring an illegal alien. The question to be decided in this case will be if or when the codefendants were aware that Arriaga was in this country illegally, not if they knew that he was being sought for killing a police officer. Therefore, the

issue is whether there is a **potential** conflict of interest and, if so, have the defendants knowingly and intelligently waived such a conflict.

While "joint representation is not per se violative of the Sixth Amendment's guarantee of effective assistance of counsel, a possible conflict of interest inheres in almost every instance of multiple representation." Lockhart, 250 F.3d at 1229 (internal punctuation and citations omitted). Trial courts presented with a conflict of interest have an affirmative duty to protect the defendants' rights. Id.; Wheat, 486 U.S. at 160. Of course, a defendant may waive his right to the assistance of an attorney who is unhindered by conflicts, Holloway, 435 U.S. at 483 n. 5, provided the waiver is given knowingly and intelligently. Lockhart, 250 F.3d at 1229 (citing Edwards v. Arizona, 451 U.S. 477, 482 (1981)).

Here, Mr. Bakeman has previously represented all three codefendants in this action and the potential for a conflict of interests exists. The Court is not persuaded by Defendant Moreno's argument that there are no circumstances in which she would seek to discredit the other codefendants. The Court can see where such a circumstance would exist, such as if one of the codefendants seeks to cooperate with the Government to obtain a beneficial plea agreement and inculpates the other codefendants. In such a situation, Mr. Bakeman would be presented with the situation where he could be required to discredit the testimony of his current or previous client but doing so would violate his duty of loyalty based on the representation of the codefendants that he undertook in this action. There is a potential conflict of interest due to Mr. Bakeman's prior representation of the three codefendants.

The Government argues that the situation presented here is the same as in United States v. Lemieux, 532 F.Supp.2d 225, 233 (D. Mass. 2008), where the court found that the conflict due to prior representation of a codefendant precluded the attorney from continuing to represent his current client. In Lemieux, two police officer codefendants, Lemieux and Catanese, were charged with conspiracy to distribute OxyContin and conspiracy to collect an extension of credit through extortionate means. 532 F.Supp.2d at 227. At their initial appearance, the codefendants were represented by separate counsel. Id. A probable cause hearing was conducted, and the two attorneys were instrumental in assembling and filing a complicated package of documents that

enabled the defendants to secure their release. Id. Attorney Underhill represented Catanese and filed a notice of appearance for the purpose of probable cause and detention only. Id. Thereafter, Catanese requested appointment of counsel advising the court he could not afford private counsel. Id. The court found that Catanese was eligible for appointment of counsel but that his financial condition would be reviewed to determine whether he should contribute to the cost of counsel. Id. Catanese then retained new counsel. Id. Subsequently, Attorney Underhill substituted in on behalf of the codefendant Lemieux and the Government filed a motion to resolve any conflict of interest due to Attorney Underhill's prior representation of Catanese. Id.

The court recognized that where an attorney "faced with conflicting interests between two clients, continuing to represent one client, even if that client is aware of and waives the conflict, may render his assistance ineffective." Lemieux, 532 F.Supp.2d at 230. Faced with the situation "where the attorney's representation of one client may create an actual or potential conflict of interest as a result of his prior representation of another client, [the court] must take adequate steps to ascertain whether the conflict warrants the attorney's disqualification. Id. The court considered that "[t]he primary concern is that the attorney's loyalties may be compromised if the former client testifies at the trial of the successive client because: (1) the attorney may be tempted to use confidential information learned during the prior representation to the disadvantage of the former client, or (2) the attorney may fail to cross-examine the former client rigorously for fear of revealing or misusing privileged information learned during the prior representation to the disadvantage of the successive client." Id. To establish an actual conflict of interest, "the defendant must show: (1) that his attorney's 'earlier representation of the witness was substantially and particularly related to counsel's later representation of the defendant,' or (2) that his attorney 'actually learned particular, confidential information during the prior representation of the witness that was relevant to defendant's later case.'" Id. at 231 (quoting Smith v. White, 815 F.2d 1401, 1405 (11th Cir.1987)).

After being informed of the conflict of interest, both codefendants waived any actual or potential conflict of interest due to the prior representation of Catanese. Lemieux, 532 F.Supp.2d at 232. But the court recognized that Courts of Appeals have shown a willingness to entertain

9

1 ineffective assistance of counsel claims by defendants who have specifically waived the right to
2 conflict-free counsel. Id. So, where an actual or serious potential for conflict of interest is
3 found, the court may disqualify counsel despite the party's waiver. Id. The court found that the
4 conflict created by the subsequent representation was too great to waive. Id. at 233.

5  The court considered that the issues of probable cause were hotly contested and Attorney
6 Underhill participated in a two day hearing, vigorously cross-examining the Government's
7 witness to undercut the basis of factual support for the charges. Lemieux, 532 F.Supp.2d at 233.
8 At the conclusion of the hearing, Attorney Underhill made statements regarding a defense to the
9 case which indicated that substantial communications had taken place regarding the facts and
10 law underlying the charges. Id. Such communication would be subject to attorney client
11 privilege and would be relevant to the case. Id. The court found that this was not enough to
12 disqualify the attorney, but that the court had been informed that the codefendant was intending
13 to testify in his defense at trial. Id. This would mean that Attorney Underhill would be required
14 to cross-examine his former client during the trial and would have to make rapid and important
15 decisions on cross-examination on whether any cross-examination is the result of information he
16 had received while representing his prior client or was independently obtained. Id. Attorney
17 Underhill had represented Catanese for over two and a half months and the court had no doubt
18 that during his preparation for the probable cause hearing Attorney Underhill had obtained as
19 much information as he could from the client regarding the events that led up to his arrest and
20 other salient details regarding his twenty-year relationship with his codefendant. Id. at 234. The
21 court's finding was supported by Attorney Underhill's extensive cross-examination of the
22 Government's witness during the probable cause hearing. Id. Further, it was apparent from the
23 fact elicited during the probable cause hearing that the interests of the codefendants were adverse
24 to one another. Id. Under these circumstances, the court found that an unacceptable conflict
25 existed and Attorney Underhill was disqualified from representing Lemieux. Id.

26  There is a similarity between Lemieux and this action as Mr. Bakeman has previously
27 represented all three codefendants, however other circumstances that the court found required
28 disqualification in Lemieux are not present. The situation confronted here is that which the

Lemieux court found would not require disqualification. Mr. Bakeman has conferred with the three codefendants and the Court has no doubt that he has obtained information relevant to the charges here from each of the codefendants. But, there have been relatively few substantive proceedings in this matter and, unlike Lemieux, it is not clear that the codefendants will testify during the trial in this matter. Further there is nothing in the record from which the Court can conclude at this time that the codefendants' interests are adverse to one another.

The Government also argues that the representation in this matter is similar to that in which an attorney was disqualified in United States v. Tae Son Lee, 2011 WL 8202545 (N. D. Cal. Sept. 8, 2011). In Tae Son Lee, the trial court found that an actual conflict of interest existed because one of the codefendants who had been represented by the same counsel was now cooperating with the Government. 2011 WL 8202545, at *1. There was also a potential conflict of interest because the codefendant had presumptively shared confidential information with the attorney who would be in the position of cross examining him and the court found that there was not a valid waiver by the codefendant. Id. Therefore, the court granted the Government's motion to disqualify the attorney. Id. at *2.

However, the facts in this case are not similar to Tae Son Lee. Here, no codefendant is cooperating with the Government, and as discussed below, the codefendants have knowingly and intelligently waived any conflict. Therefore, the Court does not find Tae Son Lee to be persuasive authority that Mr. Bakeman must be disqualified.

The Court does not find that the circumstances presented here require the disqualification of Mr. Bakeman. Therefore, the Court considers if the codefendants have knowingly and intelligently waived any potential conflict.

2. <u>Whether the codefendants knowingly and intelligently waived any conflict</u>

To be valid a waiver of conflict of interest must be knowing and intelligent. Lockhart, 250 F.3d at 1232. "The Supreme Court has instructed that we must 'indulge every reasonable presumption against the waiver of fundamental rights.' " Id. (quoting Glasser v. United States, 315 U.S. 60, 70 (1942) and Allen, 831 F.2d at 1498). "For a waiver to be knowing and intelligent, the defendant must have been 'sufficiently informed of the consequences of his

1 | choice.' " <u>Lockhart</u>, 250 F.3d at 1232. This does not require "that a defendant predict that

2 | particular dilemmas will present themselves, but [it does] require that a defendant know about all

3 | the risks that are likely to develop." <u>Id.</u> (quoting <u>Allen</u>, 831 F.2d at 1500.)

Defendants Castaneda, Moreno, and Suarez argue that they signed a valid waiver of any conflict. The conflict waiver states,

> The three defendants in this case- Bernabe Madrigal Castaneda, Maria Luisa Moreno, and Erasmo Villegas - have asked Attorney Willard Bakeman to defend them jointly in the criminal case above, in which they are accused as accessories to crime. As we do not see at this time any reason to see a conflict between us, we want him to represent us jointly, with the following understandings. Although the interests of the three are consistent, each of us understands that conflicts can exist or appear during the course of the case. Notwithstanding, the three of us have determined that it is in the individual and mutual interests of each of us to have an attorney in common. We understand that if a situation occurs in which the attorney cannot represent us without harming some other client, then the attorney cannot represent the three. The three of us have the right to speak to another independent attorney about this. That is advisable, but is not mandatory.
>
> Also, the three clients understand that what we say to the attorney is not confidential between the three (the two other clients), and in truth, the attorney has the responsibility to tell the other clients what one of the clients say if it concerns a matter material to the defense. This agreement signifies that those that sign here are in agreement that Willard Bakeman will represent jointly the three clients.

(ECF No. 84 at 1-2.)

The Court finds that this waiver does not effectively communicate the potential conflicts of interest that could arise between the attorney and the codefendants such that it would constitute a knowing and intelligent waiver. The waiver does generally inform about the possibility of a conflict, but does not inform the codefendants of the risks that could develop affecting their rights in this action. For example, the waiver informs that if a situation occurs in which the attorney cannot represent the client without harming the other codefendants, the attorney cannot represent them. However, there is nothing to inform any defendant that the attorney could obtain information that would be helpful to him, but the attorney could not use such information because of the duty to the codefendant. Further, there is nothing to inform the codefendants that joint representation could affect the attorney's ability to negotiate a plea agreement favorable to one defendant at the expense of the codefendants. Since the waiver does

12

not inform the defendants of the risks that could be presented, it is not sufficient for any defendant to knowingly and intelligently waive any conflicts due to the joint representation.

At the February 11, 2019 hearing, counsel for each of the three codefendants asserted that their clients were willing to enter into a waiver of any conflict that could arise in the case. Mr. Torres stated that he spoke with his client regarding the potential issues that could arise including factual patterns that could affect him should he go to trial and testify in this matter. Mr. Torres stated that his client understood the issues and he was willing to waive any conflict. Ms. Rios stated that since she came into this action she briefly spoke with her client the issue and explained the potential issues that could arise. The Court advised the codefendants that they could not use any potential conflict as a sword later should they validly waive any conflict.

The Court conducted a Rule 44 inquiry of the three codefendants. Beginning with Defendant Castaneda, the Court informed the defendant that due to the joint representation, Mr. Bakeman may have knowledge of aspects of his defense that were important and that information could be used contrary to Defendant Castaneda's interest. The defendant was advised that by waiving the conflict he was waiving a challenge to any conflict of interest even if it harmed him. Defendant Castaneda waived any conflict of interest. The Government informed the defendant that Mr. Bakeman could use the information that he had received from Defendant Castaneda to challenge his credibility. Mr. Torres stated that he had specifically discussed with Defendant Castaneda that if he testified at trial Mr. Bakeman could use information he had received during the joint representation against him. Defendant Castaneda stated that he understood and waived any conflict.

After Ms. Rios discussed the issue with Defendant Suarez off the record, the Court addressed Defendant Suarez. Defendant Suarez was advised that, due to the previous representation, Mr. Bakeman may have information that is pertinent and important to Defendant Suarez. Defendant Suarez was advised that due to Mr. Bakeman's representation of Defendant Moreno, Mr. Bakeman could disclose information that was told to him in confidence and could be detrimental to Defendant Suarez's case. The Government was provided with the opportunity to further advise the defendant and declined. Defendant Suarez stated that he understood and

was waiving any conflict.

Defendant Moreno was advised that she had the right to be represented by counsel of her choice and that, due to the previous joint representation, Mr. Bakeman might have received information that might be beneficial to her defense and Mr. Bakeman may not be able use that information. Due to the inability to use any favorable information, Defendant Moreno cannot later complain that she was prejudiced due to any conflict. At the Government's request, Defendant Moreno was informed that Mr. Bakeman would not be able to shift the blame to the codefendants. Defendant Moreno stated that she understood and waived any conflict.

The Court finds that Defendants Castaneda, Moreno, and Suarez knowingly and intelligently waived any conflict of interest due to the joint representation by Mr. Bakeman.

**B.    Third-Party Fee Payment**

The Government also argues that the source of Mr. Bakeman's fees could pose an actual or potential conflict with his client. Defendants Castaneda, Moreno, and Suarez counter that the Government has not shown that any payment of the fees is by a more culpable codefendant or a coconspirator that was directing the defendants in their crime. Defendants Castaneda, Moreno, and Suarez contend that the Government's motion is asserting that Mexicans do not have the money to pay a private attorney and must have received it from criminal activity and that the Court should reject such prejudicial thinking. The Government responds that they have submitted facts to require the Court to inquire into the third-party payments and request that counsel be admonished for his inflammatory allegations.

The Government argues that there is a reasonable inference that the fees of Mr. Bakeman and Mr. Torres are being paid by a third-party as they are both seasonal agricultural workers who are not legally authorized to work in this country. Since there is no evidence that Moreno or Madrigal have the ability to pay their attorney fees or are aware of who is paying their attorney fees, the only reasonable conclusion is that the attorney fees are being paid by a codefendant or unindicted coconspirator. Further, the Government argues that since Defendant Suarez has now been found to lack sufficient funds to pay for counsel and has been found to be qualified for appointed counsel this bolsters the inference that a third party is paying the attorney fees.

Defendant Moreno counters that family members are not third parties for the purpose of payment of attorney fees.

In their supplemental memorandum, the Government asserts that they have now been provided with a list of the individuals who are paying Defendant Moreno's attorney fees. The list includes a charged coconspirator and family members of that charged coconspirator and another charged coconspirator. The Government argues that this raises a clear conflict which may theoretically be waived. The Government requests the Court to inquire into the source of the fees, Defendant Moreno's understanding of the conflict, and whether she understands her right to conflict free counsel and is abandoning that right and the consequences of the decision.

Defendant Moreno counters that there is not a third-party payor as the attorney fees are being paid by family members and friends. Defendant Moreno contends that the source of the attorney fees are her daughter who is the spouse of a codefendant and her son-in-law. Defendant Moreno argues that she has waived any conflict.

In Wood, the Ninth Circuit addressed a conflict of interest that existed based upon an employer paying the attorney fees of employees who had been charged with criminal activity based upon acts taken during their employment.

> Courts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise. One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest.

Wood, 450 U.S. at 268–70.

In Quintero v. United States, 33 F.3d 1133 (9th Cir. 1994), the Ninth Circuit advised courts that they need to be aware that a potential conflict of interest exists where a third-party is paying the attorney fees for an indigent defendant, particularly in drug cases. To establish a conflict to interest a defendant must show that his attorney actively represented conflicting interests and an actual conflict of interest affected his attorney's performance. Quintero, 33 F.3d at 1135. The defendant argued that neither he nor his family retained counsel and that his attorney could not or would not identify the individual who paid for his defense. Id. The court

found that the third-party fee agreement presumptively created a conflict of interest and the facts of the case raised the possibility that the interests of the third-parties and the defendant were not aligned. Id. The appellate court held that the district court should have held an evidentiary hearing on who was paying his attorney fees. Id.

Defendant Moreno has provided the Government with the names of the individuals who have paid her attorney fees. Here the attorney fees for Defendant Moreno have been paid, at least in part, by Defendant Suarez and his wife who is the daughter of Defendant Moreno. The issue therefore is whether the third-party payment of attorney fees has created a conflict of interest requiring the disqualification of Mr. Bakeman. The Government conceded at the February 25, 2019 hearing that there is no actual conflict of interest at this time but that a potential conflict of interest exists.

The Government contends that because Defendant Suarez has paid the fees for Defendant Moreno Mr. Bakeman has conflicting loyalties that cause a potential conflict of interest. Defendant Moreno argues that under Quintero family members and friends are not third-parties. However, Defendant has presented no legal authority to support such an interpretation of the case. Further, in this instance the family members who are paying the attorney fees include a codefendant and the spouse of the codefendant. Therefore, a potential conflict of interest may exist as the attorney's loyalties may be divided between the codefendant's interests due to their payment of his fees and those of his client. As discussed above, the Court finds that a potential conflict of interest exists between these parties and the fact that they are paying Defendant Moreno's attorney fees raises the question of whether the potential conflict requires disqualification of Mr. Bakeman.

A fee arrangement in which a codefendant has paid attorney fees creates a "theoretical division of loyalties." United States v. Wells, 394 F.3d 725, 733 (9th Cir. 2005). The Court finds that a potential conflict of interest exists in that Defendant Moreno's attorney fees are being or have been paid at least in part by a codefendant in this action. The Court advised Defendant Moreno that the payment of attorney fees by a codefendant could create a division of loyalties by her counsel. The Government informed the defendant that due to the fact that a codefendant was

paying her legal fees she cannot later raise a claim challenging a conflict with counsel. The Court advised the defendant that the fact that a codefendant and his family members have paid her fees may raise a conflict of interest with her counsel and that should such a conflict arise during this matter she cannot complain that she was deprived of adequate assistance of counsel due to the conflict. Defendant Moreno waived any conflict due to the payment of her attorney fees by her codefendant and his family members.

The Court finds that Defendant Moreno has knowingly and intelligently waived any conflict due to the third-party payment of her attorney fees.

## IV.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that the Government's motion to disqualify and for conflict of interest inquiry is GRANTED IN PART AND DENIED IN PART as follows:

1. The Court GRANTS the request to inquire into any conflict of interests and FINDS that:

    a. Defendants Castaneda, Moreno, and Suarez knowingly and intelligently waived any conflict of interest due to the joint representation by Mr. Bakeman;

    b. Defendant Moreno has knowingly and intelligently waived any conflict of interest due to the third-party payment of attorney fees by a codefendant and his family members; and

2. The request to disqualify Mr. Bakeman as counsel for Defendant Moreno in this action is DENIED.

IT IS SO ORDERED.

Dated: **February 27, 2019**

UNITED STATES MAGISTRATE JUDGE

17